# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GEISINGER HEALTH, | : | |
| | : | |
|           **Plaintiff,** | : | |
| | : | |
| v. | : | NO. |
| | : | |
| ATLANTICARE HEALTH SYSTEM, INC., | : | JURY TRIAL DEMANDED |
| MICHAEL CHARLTON and | : | |
| LORI HERNDON, | : | ELECTRONICALLY FILED |
| | : | |
|           **Defendants.** | : | |

## COMPLAINT FOR DECLARATORY AND OTHER RELIEF

Plaintiff Geisinger Health ("Geisinger"), by and through its undersigned counsel, states the following as its Complaint against Defendants AtlantiCare Health System, Inc. ("AtlantiCare"), Michael Charlton, and Lori Herndon in the above-captioned matter:

## INTRODUCTION

Geisinger seeks a declaratory judgment that AtlantiCare has no right to terminate its association with Geisinger under the Comprehensive Health System Integration Agreement (the "Integration Agreement") between the parties dated May 22, 2014. The Integration Agreement permits AtlantiCare to terminate its

association with Geisinger in only two circumstances: if Geisinger becomes controlled by a religious-affiliated entity or a for-profit entity within ten years after the closing. Neither has occurred. As a result, AtlantiCare's attempt at dissociation is ineffective. Geisinger is entitled to a declaratory judgment that there is no contractual or other basis for termination or dissociation and an injunction barring AtlantiCare from executing its declared dissociation strategy.

Michael Charlton, AtlantiCare's chairman and a member of Geisinger's board, breached his fiduciary duty to Geisinger and was aided and abetted by AtlantiCare's CEO, Lori Herndon. As a member of *Geisinger's* board of directors, Mr. Charlton owed *Geisinger* fiduciary duties of care and loyalty. Mr. Charlton's self-interested actions, which instigated this dispute, are the ultimate betrayal of Geisinger, on whose board he sits. Mr. Charlton's bad acts were aided and abetted by Ms. Herndon. Their actions continue to thwart Geisinger and AtlantiCare's non-profit missions.

As alleged further below, Geisinger is entitled to a declaratory judgment and injunctive and other relief to remedy this wrongful conduct.

## THE PARTIES

1. Geisinger, formerly known as Geisinger Health System Foundation, is a Pennsylvania non-profit, non-stock corporation with a principal place of business in Danville, Pennsylvania. Geisinger's subsidiaries operate 13 hospitals and two research centers. Geisinger's primary charitable mission is to support the delivery of quality medical care to three million residents in Pennsylvania and New Jersey. Geisinger's subsidiaries have garnered national accolades for providing integrated, innovative, and cost-effective health care. A 2017 national survey of hospital and health system C-suite executives and department heads named Geisinger as one the top five health systems in the U.S. for being a "model of innovation."

2. AtlantiCare is a New Jersey non-profit corporation with its principal place of business in Egg Harbor Township, New Jersey. AtlantiCare operates two hospitals and a number of clinics in and around Atlantic City, New Jersey.

3. Upon information and belief, Mr. Charlton is a New Jersey citizen residing in Galloway, New Jersey. Mr. Charlton is AtlantiCare's chairman and a member of Geisinger's board.

4. Upon information and belief, Ms. Herndon is a New Jersey citizen residing in Brigantine, New Jersey. Ms. Herndon is AtlantiCare's CEO.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, because the parties are citizens of different states and the amount in controversy exceeds $75,000.

6. Venue is proper in the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred in this district.

## FACTS

7. In late 2012, AtlantiCare was in financial distress. It retained a financial advisory firm that concluded that it no longer was viable for AtlantiCare to maintain its status as an independent, freestanding health system.

8. Following the report, AtlantiCare began exploring strategic options. AtlantiCare initiated discussions with Geisinger in furtherance of its desire to be acquired by Geisinger. Extensive due diligence and negotiations followed.

9. On or about May 22, 2014, the parties' negotiations culminated in the execution of the Integration Agreement, which effectuated the corporate integration of AtlantiCare into Geisinger. The transaction contemplated by the Integration Agreement was structured as a permanent acquisition.

10. On the closing date, AtlantiCare named Geisinger as its sole corporate member, becoming a permanent part of Geisinger's health system.

11. Under the Integration Agreement and AtlantiCare's corporate governance documents, Geisinger must approve any changes to AtlantiCare's governance documents and credit structure. The Integration Agreement also required AtlantiCare to re-brand itself as "part of the Geisinger System."

12. The Integration Agreement recognizes the permanent nature of the transaction and provides, in Section 9.1, that AtlantiCare may terminate its association from the Geisinger system only if, within ten years after the closing, Geisinger: (i) cedes control to a for-profit entity; or (ii) becomes affiliated with a religious organization. No other provision in the Integration Agreement contemplates or permits AtlantiCare to separate from Geisinger or gives AtlantiCare a right to dissociate from Geisinger.

13. The Integration Agreement includes a broad integration clause which states that "this Agreement . . . constitutes the entire agreement between the parties regarding the matters addressed herein."

14. In August 2019, Mr. Charlton called the chairman of Geisinger's board and alleged that Geisinger had breached the Integration Agreement. Mr.

Charlton stated that AtlantiCare intended to terminate its association with Geisinger.

15. The call blindsided Geisinger. First, prior to the call from Mr. Charlton, AtlantiCare had given Geisinger no indication that AtlantiCare believed Geisinger was in material breach of the Integration Agreement.

16. Second, the Integration Agreement does not provide for dissociation unless Geisinger cedes control to a for-profit or religious institution within ten years of the closing. Neither circumstance has occurred.

17. Third, Mr. Charlton served (and as of this filing still serves) on *Geisinger's* board of directors and owed a fiduciary duty and duty of loyalty *to Geisinger*. The call revealed that Mr. Charlton had been conspiring with AtlantiCare's directors against Geisinger's interest. Upon information and belief, AtlantiCare's board, including Mr. Charlton, had been plotting to take action against Geisinger's interests and had been doing so in collaboration and consultation with Ms. Herndon. Specifically, they had been plotting to effectuate AltantiCare's termination of its association with Geisinger, in contravention of AtlantiCare's contractual obligations and other duties to Geisinger, of Mr. Charlton's fiduciary duty and duty of loyalty to Geisinger, and of the best interest

of the patient populations that both Mr. Charlton and Ms. Herndon were obligated to serve.

18. On September 17, 2019, the parties' management and board leadership met in Allentown, Pennsylvania. At this meeting, AtlantiCare's representatives, including Mr. Charlton, again asserted that AtlantiCare intended to terminate its association with Geisinger.

19. On September 26, 2019, the AtlantiCare board of directors voted to unilaterally dissolve its relationship with Geisinger. Upon information and belief, in so doing they were led by Mr. Charlton. Upon information and belief, they were advised by Ms. Herndon, who also voted in favor of unilateral dissolution as a member of AtlantiCare's Board of Directors.

20. On September 27, 2019, AtlantiCare sent Geisinger a letter advising that, on September 26, 2019, AtlantiCare's board of directors "voted to pursue realignment of the affiliation" between Geisinger and AtlantiCare and "to take the necessary steps to terminate the Integration Agreement." The letter was signed by Mr. Charlton, the chairman of AtlantiCare's board of directors.

21. Upon information and belief, the dissolution vote was instigated and promoted by persons including Mr. Charlton and Ms. Herndon.

22. AtlantiCare continues to maintain that it is entitled to terminate its association with Geisinger.

## COUNT I
## CLAIM FOR DECLARATORY JUDGMENT
## AGAINST ATLANTICARE

23. Paragraphs 1 through 22 of this Complaint are incorporated by reference as if set forth fully herein.

24. There is an actual justiciable controversy between the parties as to whether AtlantiCare is entitled to terminate its association with Geisinger.

25. The Integration Agreement permits termination of AtlantiCare's association with Geisinger in only two circumstances: Geisinger falling under the control of a religious-affiliated or for-profit entity during the ten years following the transaction's closing. Neither circumstance has occurred.

26. Accordingly, the Integration Agreement does not allow AtlantiCare to terminate its association with Geisinger.

27. Geisinger seeks a declaration pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et al.*, that AtlantiCare has no contractual or other right to terminate its association with Geisinger.

28. Geisinger further seeks an order pursuant to 28 U.S.C. § 2202 enjoining AtlantiCare from continuing to pursue dissociation in violation of Section 9.1 of the Integration Agreement.

WHEREFORE, Geisinger respectfully requests that this Court (1) issue a declaratory judgment that AtlantiCare has no right to terminate its association with Geisinger and is not entitled to rescission of the Integration Agreement and (2) enjoin AtlantiCare from continuing to pursue termination absent either of the circumstances set forth in the Integration Agreement.

## COUNT II
## BREACH OF FIDUCIARY DUTY
## AGAINST MICHAEL CHARLTON

29. Paragraphs 1 through 28 of this Complaint are incorporated by reference as if set forth fully herein.

30. Mr. Charlton is a member of Geisinger's board of directors and has been since January 2019.

31. As a member of Geisinger's board of directors, Mr. Charlton attended and participated in confidential meetings in Pennsylvania.

32. Mr. Charlton owed, and continues to owe, fiduciary duties of care and loyalty to Geisinger. These fiduciary duties include obligations to exercise good

business judgment, to act prudently in the operation of Geisinger's business, to discharge his responsibilities in good faith, to keep Geisinger's confidential information confidential, to act in the best interest of Geisinger, and to put the interests of Geisinger before his own.

33. Mr. Charlton breached those duties.

34. Mr. Charlton's conduct toward Geisinger was willful and malicious.

35. As a direct and proximate result of Mr. Charlton's wrongful and unlawful conduct, Geisinger has suffered and continues to suffer substantial damage for which Mr. Charlton is liable.

WHEREFORE, Geisinger demands the entry of judgment in its favor and against Mr. Charlton, together with an award of compensatory and punitive damages and such other and further relief as the Court deems appropriate under the circumstances.

## COUNT III
## AIDING AND ABETTING BREACH OF FIDUCIARY DUTY AGAINST LORI HERNDON

36. Paragraphs 1 through 35 of this Complaint are incorporated by reference as if set forth fully herein.

37. Ms. Herndon served as CEO of AtlantiCare while Mr. Charlton served as chairman of AtlantiCare's board of directors.

38. Ms. Herndon was aware of Mr. Charlton's position as a member of the board of directors of Geisinger.

39. Upon information and belief, Ms. Herndon plotted with Mr. Charlton to wrongfully terminate AtlantiCare's association with Geisinger. Ms. Herndon thus had knowledge of Mr. Charlton's breach of fiduciary duty to Geisinger, and provided substantial assistance and encouragement in effecting Mr. Charlton's breach.

40. Ms. Herndon's conduct toward Geisinger was willful and malicious.

41. As a direct and proximate result of Ms. Herndon's wrongful and unlawful conduct, Geisinger has suffered and continues to suffer substantial damage for which Ms. Herndon is liable.

WHEREFORE, Geisinger demands the entry of judgment in its favor and against Ms. Herndon, together with an award of compensatory and punitive damages and such other and further relief as the Court deems appropriate under the circumstances.

# DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Geisinger demands a jury trial on all issues so triable.

Respectfully submitted,

*Of counsel*:
Margaret H. Warner
Michael S. Nadel
MCDERMOTT WILL & EMERY LLP
500 North Capitol Street, N.W.
Washington, D.C.  20001
(202) 756-8000

 /s/ Daniel T. Brier
Daniel T. Brier (PA ID 53248)
dbrier@mbklaw.com
Donna A. Walsh (PA ID 74833)
dwalsh@mbklaw.com
Richard L. Armezzani (PA ID 322804)
rarmezzani@mbklaw.com
MYERS, BRIER & KELLY, LLP
425 Spruce Street
Scranton, PA  18503
(570) 342-6100

*Attorneys for Plaintiff Geisinger Health*

Date:  January 23, 2020